```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
PERRY COHAN and REZVAN LAHIJI,

                Plaintiffs,        MEMORANDUM & ORDER
                                   09-CV-3094(JS)(ETB)
    - against –

MORDECHAY MOVTADY,

                Defendant.
----------------------------------x
APPEARANCES:
For Plaintiff:     Daniel Gildin, Esq.
                   Kevin M. Shelley, Esq.
                   Kaufmann Gildin Robbins & Oppenheim LLP
                   777 Third Avenue, 24th Floor
                   New York, NY 10017

For Defendants:    Gary M. Kushner, Esq.
                   Forchelli, Curto, Deegan, Schwartz, Mineo,
                   Cohn & Terrana, LLP
                   333 Earle Ovington Boulevard, Suite 1010
                   Uniondale, NY 11553
```

SEYBERT, District Judge

On June 20, 2009, Perry Cohan and Rezvan Lahiji commenced this action against Mordechay Movtady alleging that Mr. Movtady defaulted on a promissory note and two additional loans from 2007 and 2008. Mr. Cohan and Ms. Lahiji have now moved for summary judgment. For the reasons set forth below, the motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND

On or about January 1, 2007, Mr. Movtady made, executed, and delivered a Promissory Note in the principal amount of $3,335,000 ("First Loan"), which represented the

cumulative amount that Plaintiff[s] loaned Mr. Movtady between 1987 and the date of the Promissory Note.[1] (Def. 56.1 Stmt. ¶¶ 1-2.) Under the terms of the Promissory Note, Mr. Movtady agreed to make interest payments of $25,195 per month through December 30, 2007 and $28,000 per month beginning on January 1, 2008 until the principal balance was repaid. (Def. Decl. Ex. B; Def. 56.1 Stmt. ¶ 4.) The balance of the loan, including all outstanding interest, was due on or before December 30, 2008. (Def. Decl. Ex. B.) In the event of default, the Promissory Note provided for Mr. Movtady's payment of reasonable attorneys' fees and a 1.5% late payment fee. (Def. 56.1 Stmt. ¶ 5.) Mr. Movtady stopped making monthly interest payments after May 2009, and has not paid any portion of the $3,335,000 due as principal. (Def. 56.1 Stmt. ¶¶ 6-7.)

In March 2007, Mr. Cohan delivered four separate checks to Mr. Movtady totaling $1,350,000 ("Second Loan"), which Mr. Movtady agreed to repay by December 31, 2007[2] with monthly interest payments at a rate of 11% per annum. (Def. 56.1 Stmt. ¶¶ 8-10, 12-14, 16-18, 20-22, 24-25.) Although Mr. Movtady

---

[1] Defendant's October 17, 2007 email to Ms. Lahiji summarizes those oral loan agreements comprising the Promissory Note. (Def. Decl. Ex. A.)

[2] Defendant alleges that the Second Loan did not have a maturity date (Def. Decl. ¶ 30), yet admits that he agreed to repay the four checks comprising that loan by December 31, 2007 (Def. 51.6 Stmt. ¶¶ 10, 14, 18, 22).

later delivered to Plaintiff Cohan an undated check for $1,500,000 on which he wrote "Return of Loan 4/1/07," the check was never deposited or cashed due to insufficient funds in Mr. Movtady's account. (Def. 56.1 Stmt. ¶¶ 28-29; Pl. Ex. 4 at ¶ 11.)

On October 24, 2008, Mr. Movtady received a $200,000 interest-free loan from Plaintiff Cohan ("Third Loan"), which he agreed to repay by December 1, 2008. (Def. 56.1 Stmt. ¶¶ 30-33.) On December 1, 2008, Mr. Movtady delivered to Mr. Cohan a check for $200,000 on which he wrote "Return of Loan Oct. 25, 2008" that also was never deposited or cashed. (Def. 56.1 Stmt. ¶¶ 35-36; Pl. Ex. 4 at ¶ 12.)

Plaintiffs claim that all three loans went into default on their respective maturity dates, and they commenced this action on June 20, 2009 for the unpaid principal, interest, and attorneys' fees in the amount of $5,832,444.79.

Mr. Movtady does not dispute that he has not repaid any of the principal on the Promissory Note, Second Loan, or Third Loan. (Def. 56.1 Stmt. ¶¶ 6, 11, 15, 19, 23, 37.) But Mr. Movtady asserts: (1) that the statute of limitations for recovery of the First Loan has expired, (2) that the Promissory Note is invalid and unenforceable, (3) that none of the loans are in default because the parties orally agreed to extend the maturity dates; and (4) that the Second Loan had no maturity

3

date at all. In addition, Mr. Movtady argues that Ms. Lahiji does not have standing to bring suit because she is a citizen and resident of Iran.

DISCUSSION

I. Standard of Review

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'"

4

Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (internal quotations and citations omitted). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

In an action on a promissory note, summary judgment is appropriate if there is "'no material question concerning execution and default' of the note." Merrill Lynch Commercial Fin. Corp. v. All State Envelopes Ltd., No. 09-CV-0785, 2010 WL 1177451, at *2 (E.D.N.Y. Mar. 24, 2010) (internal citations and quotations omitted).

This Court will address the merits of each of Mr. Movtady's defenses.

## II. Standing

Standing is "the threshold question in every federal case," and implicates the Court's subject matter jurisdiction. Ross v. Bank of America, N.A.(USA), 524 F.3d 217, 222 (2d Cir. 2008). Thus, the Court must consider standing-related issues first.

### A. The Trading With The Enemy Act

Mr. Movtady contends that Ms. Lahiji lacks standing because, as an Iranian resident and citizen, she is an enemy alien who lacks the power to sue in United States courts. In this regard, Mr. Movtady relies on the Trading With The Enemy Act of 1917. See 50 U.S.C. App. § 7(b) ("Nothing in this

5

Act . . . shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war . . . ."); see also The Santa Lucia, 44 F. Supp. 793, 794 (S.D.N.Y. 1942). But Mr. Movtady's reliance is misguided.

Under the Trading with the Enemy Act, an "enemy" is defined as "[a]ny individual . . . of any nationality, resident within the territory (including that occupied by the military and naval forces) . . . <u>of any nation with which the United States is at war</u>." 50 U.S.C. App. § 2 (emphasis added). The United States has not declared war against Iran. Therefore, although Iran may be regarded as an enemy of the United States for some purposes,[3] it is not an enemy under the statute. It follows then that the Trading with the Enemy Act does not preclude Ms. Lahiji's suit.

B. Contractual Standing

The parties did not brief any standing-related issue other than the Trading With The Enemy Act. But, because standing goes to the Court's subject matter jurisdiction, the Court must sua sponte consider any standing-related problem that appears on the face of the parties' papers. Here, the

---

[3] See generally Abdullahi v. Prada USA Corp., 520 F.3d 710, 712 (7th Cir. 2008) (stating that hostility towards Iranians may "be based on the fact that Iran is regarded as an enemy of the United States").

6

Promissory Note, the Second Loan, and the Third Loan all raise potential standing problems.

### 1. The Promissory Note

The Complaint and Plaintiffs' summary judgment motion seeks to recover on the Promissory Note on both Mr. Cohan's and Ms. Lahiji's behalf. This poses certain difficulties. The Promissory Note identifies both Mr. Cohan and Ms. Lahiji as "Lender." But the Promissory Note then goes on to say that Mr. Movtady "promise[s] to pay to the order of REZVAN LAHIJI" the amount due. Conversely, the Promissory Note contains no promise to pay Mr. Cohan anything.

Because Mr. Cohan is listed as "Lender," and signed the Promissory Note in that capacity, he might be a party to the contract for some purposes. But, because the Promissory Note does not vest him with any right to the money owed, he lacks standing to collect on it. Zarintash v. Boffa, 98-CV-2696, 1999 WL 155991, at *2 (S.D.N.Y. 1999) ("As the note names only Bergmann as payee -- for whatever reasons -- Zarintash cannot claim to have suffered an injury from the note having gone unpaid"). And Mr. Cohan has put forth nothing to suggest that he has standing on other grounds, such as an assignee. Thus, the Court must sua sponte dismiss Mr. Cohan's Promissory Note claim for lack of standing. Only Ms. Lahiji's Promissory Note claim can proceed.

2. The Second and Third Loans

Ms. Lahiji's claim based on the Second and Third Loans suffers from the same standing defect as Ms. Cohan's Promissory Note claim. The parties agree that these Loans came from Mr. Cohan, not Ms. Lahiji.[4] And the parties have submitted nothing to indicate that Ms. Lahiji otherwise has a right to collect on them. Thus, the Court must sua sponte dismiss Ms. Lahiji's loan-based claims for lack of standing. See Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that clearly evidence[ ] an intent to permit enforcement by the third party in question") (internal quotations and citations omitted). Only Mr. Cohan's claims to collect the Second and Third Loans can proceed.

III. Statute of Limitations for Recovery of the First Loan

New York imposes a six year statute of limitations for breach of contract. N.Y. C.P.L.R. 213(2). Mr. Movtady argues that because six years have passed since he received the First

---

[4] See Def. 56.1 Stmt. ¶ 9 ("The $150,000 . . . was a loan from Cohan to Movtady"); Def. 56.1 Stmt. ¶ 13 ("The $1,000,000 was a loan from Cohan to Movtady"); Def. 56.1 Stmt. ¶ 17 ("The $150,000 . . . was a loan from Cohan and Farzaneh Cohan to Movtady"); Def. 56.1 Stmt. ¶21 ("The $50,000 . . . was a loan from Cohan to Movtady"); Def. 56.1 Stmt. ¶ 31 ("The $200,000 . . . was a loan from Cohan to Movtady"); see also Def. 56.1 Stmt. ¶¶ 24.

Loan, the statute of limitations for recovering those funds has expired. (Def. Mem. at 3.) He is wrong. Ms. Lahiji is not suing to enforce the oral agreements that comprised the First Loan. She is suing to enforce the Promissory Note that superseded those agreements.[5]

Ms. Lahiji's claim to enforce the Promissory Note is separate and distinct from any claim she might have to enforce the antecedent oral agreements, because the Promissory Note is an independent and wholly enforceable negotiable instrument. Unlike an "acknowledgement or promise" to repay a debt under N.Y. General Obligations Law § 17-101, the Promissory Note created new legal obligations with different rights and liabilities than the earlier oral contracts. See, e.g., N.Y. U.C.C. Law § 3-301 (McKinney 2001) (describing the rights of a holder of a negotiable instrument); id. § 3-414. And, because

---

[5] Claims to enforce the preceding oral agreements may not be time barred. Breach of contract actions accrue at the time of breach, not contract formation, see ABB Indus. Sys. Inc. v. Prime Tech., Inc., 120 F.3d 351, 360 (2d Cir. 1997); Daisley v. FedEx Ground Package Sys., Inc., No. 08 CV 4063, 2008 WL 5083009, at *3 (E.D.N.Y. Dec. 1, 2008), and acknowledgment of the debt will toll the statute of limitations, N.Y. Gen. Oblig. Law § 17-101 (McKinney 2010). Arguably, Defendant's October 17, 2003 email detailing the "variouse [sic] loan amounts" (Def. Decl. Ex. A.) satisfies N.Y. General Obligations Law § 17-101 because it recognizes the debt and is consistent with an intention to pay, thereby tolling the statute of limitations. See, e.g., Banco Do Brasil S.A. v. Antigua & Barbuda, 268 A.D.2d 75, 77-78, 707 N.Y.S.2d 151 (1st Dep't 2000) (holding that a letter "confirm[ing] four balances," revived an otherwise time-barred claim (internal quotation marks omitted)).

Mr. Movtady did not sign the Promissory Note until January 2007, and did not breach it until later, Ms. Lahiji's Promissory Note claim clearly falls within New York's six year statute of limitations.

III. Validity of Promissory Note

Next, Mr. Movtady argues that the Promissory Note is invalid because it was not supported by consideration. Again, he is wrong. Under New York law, "no [additional] consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind." N.Y. U.C.C. LAW § 3-408 (McKinney 2001); see also Citicorp Int'l Trading Co. v. W. Oil & Refining Co., 790 F. Supp. 428, 435 (S.D.N.Y. 1992) (finding that a promissory note based on a pre-existing debt was supported by valid consideration); Sun Forest Corp. v. Shvili, 151 F. Supp. 2d 367, 391 (S.D.N.Y. 2001) (same). The parties do not dispute that the Promissory Note reflected the cumulative amount of the pre-existing loans between them. It follows then that the Promissory Note is valid and enforceable.

IV. Oral Modification

Mr. Movtady further argues that Plaintiffs are not entitled to summary judgment because they orally agreed to extend the loans' due dates. Thus, Mr. Movtady contends, he has not yet breached any contract. In response, Plaintiffs contend

10

that any such oral modifications are unenforceable because they violate the Statute of Frauds and are not supported by adequate consideration. Plaintiffs are only half-right, but still prevail on the merits. As discussed below, the Statute of Frauds does not bar the alleged oral modifications. But, because they are not supported by adequate consideration, they are unenforceable.

    A.    <u>Statute of Frauds</u>

Under New York's Statute of Frauds, contracts which "have absolutely no possibility in fact and law of full performance within one year," must be in writing. <u>D & N Boening v. Kirsch Beverages</u>, 472 N.E.2d 992, 993, 483 N.Y.S.2d 164 (1984); <u>see also</u> N.Y. GEN. OBLIG. LAW § 5-701(a)(1) (McKinney 2010). The alleged oral modification in dispute here — to extend the maturity date to an unknown future date — could, by its terms, be completed within one year. <u>See</u> <u>Rosbach v. Indus. Trading Co.</u>, 81 F. Supp. 2d 522, 526 (S.D.N.Y. 2000) (holding that the Statute of Frauds did not preclude enforcement of an oral loan without a specified maturity date because defendants could have repaid the loan within a year). Since no evidence suggests that Mr. Movtady could not have repaid the loan within a year of the alleged modification, no Statute of Frauds problem exists.

B.  Consideration

To be enforceable, an oral modification must possess all of the elements necessary to form a contract, including valid consideration. See Singapore Recycle Centre Ptd Ltd. v. Kad Int'l Mktg, Inc., No. 06-CV-4997, 2009 WL 2424333, at *7 (E.D.N.Y. Aug. 6, 2009) ("Consideration is necessary to prove the existence of an oral modification to a written agreement."); Conn. Nat'l Bank v. Hack, 186 A.D.2d 387, 338, 588 N.Y.S.2d 180 (1st Dep't 1992) ("[T]he terms of the note could have been modified orally so long as the modification was supported by adequate consideration."); see also N.Y. Gen. Oblig. Law § 5-1103 (McKinney 2010).  Here, Mr. Movtady argues that he provided valid consideration for extending the First Loan because he agreed to continue paying interest, and valid consideration for extending the Second and Third Loans because he provided undated checks as "additional collateral."  (Movtady Decl. ¶¶ 16-19, 31-33; Def. 56.1 Stmt. ¶¶ 10, 14, 18, 22, 26-29, 32-36.)  He is wrong.  It is well-settled that "an agreement by a creditor to postpone the payment of a debt due . . . [with] no other or further consideration than the agreement of the debtor to pay the debt with interest on that day, is void for want of consideration." Kellogg v. Olmsted, 25 N.Y. 189, 190 (N.Y. 1862); Mutual Life Ins. Co. of New York v. Aldrich, 60 N.Y.S. 195, 196 (2d Dep't 1899); Manufacturers Hanover Overseas Capital

Corp. v. Southwire Co., 589 F. Supp. 214, 219 (S.D.N.Y. 1984); 82 N.Y. Jur. 2d Payment and Tender § 24 (2010). Similarly, Mr. Movtady's tender of an undated check is not valid consideration for extending the Second and Third Loans. At most, an undated check represents just a "promise to pay." See generally Mansion Carpets, Inc. v. Marinoff, 24 A.D.2d 947, 947, 265 N.Y.S.2d 298, 299 (1st Dep't 1965). And, obviously, a debtor's promise to pay a debt that the debtor already owes is not valid consideration for anything. See In re Bennett, 154 B.R. 140, 149 (N.D.N.Y. Bnkr. 1992).[6]

V. Second Loan's Due Date

Finally, Mr. Movtady contends that he has not breached his obligation to repay the Second Loan because the Second Loan had no due date. (Movtady Decl. ¶¶ 28, 30). This argument is meritless. In responding to Plaintiff's Rule 56.1 Statements, Mr. Movtady conceded that he agreed to repay the Second Loan by December 31, 2007. (Def. 56.1 Stmt. ¶¶ 10, 14, 18, 22). And parties are bound by their concessions in Rule 56.1 Statements.

---

[6] Mr. Movtady also appears to argue that Mr. Cohan agreed to extend the Second and Third Loans in writing, through unspecified "e-mail communications." (Def. 56.1 ¶¶ 10, 14, 18, 22, 26, 27). This argument fails on procedural grounds, because referring to unspecified "e-mail communications" is not a "citation to evidence which would be admissible." See Local Rule 56.1(d). In any event, the only "e-mail communications" in the record reflect no such written agreement. Rather, even if construed in the light most favorable to Mr. Movtady, they reflect only Mr. Cohan's continued demands for payment "on a priority basis." (See Movtady Decl. Ex. 4.)

13

See Hoodho v. Holder, 558 F.3d 184, 191 (2d Cir. 2009) ("acts admitted by a party are judicial admissions that bind th[at] [party] throughout th[e] litigation") (internal citations and quotations omitted).

VI. Interest on the Second and Third Loans

In addition to repayment of principal, Mr. Cohan seeks unpaid interest on the Second and Third Loans. This request is somewhat problematic given the evidentiary record.

With respect to the Second Loan, Mr. Movtady conceded that he agreed to pay an 11% annual interest rate. (Cohan Decl. Ex. 4 at ¶ 7; Def. 56.1 Stmt. ¶ 25.) But Mr. Movtady claims that he partially pre-paid this interest. (Cohan Decl. Ex. 4 at ¶ 7.) And it is unclear how much, if any, interest Mr. Movtady pre-paid. The parties' Rule 56.1 Statements are silent this question. And Mr. Cohan has not otherwise submitted evidence showing that no material factual disputes exist as to whether Mr. Movtady made any interest payments. Thus, the Court can only partially grant Mr. Cohan's summary judgment motion with respect to the Second Loan: it can award principal, but not any specific interest figure. The Court, however, grants Mr. Cohan leave to file a second summary judgment motion. In this motion, Mr. Cohan should seek to demonstrate that no triable issues of

14

fact exist concerning Mr. Movtady's outstanding interest obligations on the Second Loan.[7]

Mr. Cohan also seeks interest payments on the Third Loan. The parties agree that this loan was originally interest-free. However, Mr. Cohan contends that he's entitled to prejudgment interest at New York's statutory rate beginning when the loan became past due.

Mr. Cohan did not brief this issue. But he's correct that, under New York law, prejudgment interest at the statutory rate generally accrues once a loan passes its due date and isn't repaid. See Spodek v. Park Property Development Associates, 279 A.D.2d 467, 468, 719 N.Y.S.2d 109, 110 (2d Dep't 2001). The question is whether the loan's original interest-free nature alters this equation. The Court could find no New York law on point. But the law from other states generally holds that, absent an agreement to waive prejudgment interest, even an interest-free loan begins accruing prejudgment interest once the due date for repayment passes. See Valley City School Dist. 88-0005 v. Ericson State Bank, A-08-913, 2009 WL 1639739, at *5 (Neb. Ct. App. 2009) (unpublished); Harris v. Harris, 1998 Ohio App. LEXIS 4520, at *7 (Ohio Ct. App. 1998); Nielsen-Miller Const. Co. v. Pantlin/Prescott, Inc., 602 So.2d 1366, 1368 (Fla.

---

[7] To the extent that the parties can stipulate as to an unpaid interest amount, this alternative will likely save time and legal fees.

15

Dist. Ct. App. 1992); IBM Corp. v. Lawhorn, 106 Idaho 194, 198 (Idaho Ct. App. 1984). The Court sees no reason why New York's own courts would disagree. Consequently, the Court awards Mr. Cohan prejudgment interest on the Third Loan.

CONCLUSION

Plaintiffs' summary judgment motion is GRANTED IN PART AND DENIED IN PART.

Mr. Cohan's claims arising from the Promissory Note are dismissed sua sponte for lack of standing. Ms. Lahiji's summary judgment motion with respect to the Promissory Note claim is GRANTED.

Ms. Lahiji's claims arising from the Second and Third Loans are sua sponte dismissed for lack of standing. Mr. Cohan's summary judgment motion with respect to the Second Loan is GRANTED IN PART AND DENIED IN PART. It is GRANTED as to the Loan's principal, but DENIED as to outstanding interest. The Court, however, grants Mr. Cohan leave to file a second summary judgment motion concerning interest owed. Mr. Cohan's summary judgment motion with respect to the Third Loan is GRANTED.

The Court awards the following relief:

1. On the Promissory Note, Ms. Lahiji is awarded: (i) $3,335,000 in unpaid principal; (ii) $448,000 in unpaid interest; (iii) $6,720 in late fees. In addition, the Promissory Note entitles Ms. Lahiji to "reasonable attorneys

16

fees and costs of collection." Ms. Lahiji is directed to submit, within fifteen (15) days, her total claim under this provision, and is further directed to provide bills, time records, and/or other documentary evidence as needed to support it.

    2. On the Second Loan, Mr. Cohan is awarded $1,350,000 in unpaid principal.

    3. On the Third Loan, Mr. Cohan is awarded $200,000 in unpaid principal, and prejudgment interest at New York's statutory 9% rate starting from December 2, 2008, totaling $34,520.55.[8]

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          November 1, 2010

---

[8] The 9% statutory interest rate works out to a daily rate of .0002465%, or daily interest in the approximate amount of $49.315. Seven hundred (700) days have passed since December 2, 2008. This works out to $34,520.55 in total prejudgment interest.